UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Rickie Hill, | Case No.: 2:21-cv-01677-APG-BNW |
| Plaintiff | **Screening Order** |
| v. | |
| Array, et al., | |
| Defendants | |

Plaintiff Rickie Hill, who is in the custody of the Nevada Department of Corrections (NDOC), has submitted a civil-rights complaint under 42 U.S.C. § 1983 and filed an application to proceed in forma pauperis.[1] The matter of the filing fee will be temporarily deferred. I now screen Hill's civil-rights complaint under 28 U.S.C. § 1915A.

**I.    SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[2] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.[3] All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who

---

[1] ECF Nos. 1, 1-1.
[2] *See* 28 U.S.C. § 1915A(a).
[3] *See* 28 U.S.C. § 1915A(b)(1)(2).

are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[4]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[5] In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[6] Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[7] but a plaintiff must provide more than mere labels and conclusions.[8] "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[9] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[10]

## II. SCREENING OF COMPLAINT

Hill sues multiple defendants for events that allegedly occurred on November 1, 2020, while he was incarcerated at High Desert State Prison.[11] Hill sues Array, Matos, and A. Karva in their official and individual capacities and seeks monetary and injunctive relief.[12] Hill alleges

---

[4] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[5] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[6] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[7] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

[8] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[10] *Id.*

[11] ECF No. 1-1 at 1–2.

[12] *Id.* at 2, 9.

that around 3:00 p.m. correctional officer Matos arrived at Hill's cell with letters from his family.[13] Matos said that to get the letters, and prevent Matos from giving the letters to Hill's enemies, Hill needed to let Matos perform fellatio on him. Hill unwillingly complied out of fear for his family members' lives.

Later that same day, correctional officer Array showed up to Hill's cell with letters from his family.[14] Array said that to get the letters and not have them given to his enemies, Hill needed to let Array give him fellatio. Hill unwillingly complied out of fear for his family members' lives. Later the same day, correctional officer Karva showed up to Hill's cell with letters from his family.[15] Karva said that to get the letters and not have them given to his enemies, Hill needed to let Karva give him fellatio. Hill unwillingly complied out of fear for his family members' lives.

Hill asked for grievance forms to complain about these incidents but was denied. Hill asked to see a medical provider because of these incidents but was denied. Hill suffers from depression and anxiety and has panic attacks because of these incidents. I construe these allegations as alleging claims under the Eighth Amendment for sexual assault, abuse, or harassment.

**A.  Eighth Amendment sexual assault, abuse, or harassment**

"The Eighth Amendment prohibits cruel and unusual punishment in penal institutions."[16] Whether a specific act constitutes cruel and unusual punishment is measured by "the evolving

---

[13] *Id.* at 4.
[14] *Id.* at 5.
[15] *Id.* at 6.
[16] *Wood v. Beauclair*, 692 F.3d 1041, 1045 (9th Cir. 2012).

3

standards of decency that mark the progress of a maturing society."[17]  "Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment."[18]  In evaluating a prisoner's claim, courts consider whether "the officials act[ed] with a sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation.[19]

Where there is no legitimate penological purpose for a prison official's conduct, courts presume malicious and sadistic intent.[20]  Sexual contact between a prisoner and a prison guard serves no legitimate role and "is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'"[21]  In sexual contact cases, there is no lasting physical injury requirement because the only requirement is that the officer's actions be offensive to human dignity.[22]  But the Eighth Amendment's protections do not generally extend to mere verbal sexual harassment.[23]  A "prisoner presents a viable Eighth Amendment claim where he or she proves that a prison staff member, acting under color of law and without legitimate penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning the prisoner."[24]

---

[17] *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

[18] *Wood*, 692 F.3d at 1046 (citing *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000)).

[19] *Id*. (quoting *Hudson*, 503 U.S. at 8).

[20] *Id*. at 1050.

[21] *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

[22] *Schwenk*, 204 F.3d at 1196.

[23] *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).

[24] *Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020).

Hill alleges that on a single day in November 2020, three correctional officers on separate occasions refused to provide Hill his mail and threatened to expose Hill's family members' addresses to his enemies unless Hill let the correctional officer perform fellatio on him. Hill unwillingly complied each time because he feared for his family members' safety. These allegations are sufficiently harmful to state a colorable claim for sexual assault, abuse, or harassment under the Eighth Amendment for screening purposes. So Claims 1, 2, and 3, alleging Eighth Amendment sexual abuse, assault, or harassment against Matos, Array, and Karva can proceed.

But I note that Hill's allegations appear to describe fantastical or delusional scenarios and this case might be malicious. I do not make this statement lightly; sexual assault, abuse, and harassment of prisoners is abhorrent. And court intervention is often needed to protect the prisoners who are subject to such abuse. But I have presided over several of Hill's cases against NDOC employees, and I am aware that Hill has alleged a fact pattern like this before, swapping only the date and targets of the claim.[25] So I caution Hill that the court is authorized under 28 U.S.C. § 1915(d)(2)(B)(i) to dismiss a case if at any time it determines that the case is "frivolous or malicious," and that such a finding will count as a "strike" against Hill under the Prison Litigation Reform Act.[26]

**B.   This case will not be referred to the Inmate Early Mediation Program**

The District of Nevada's Inmate Early Mediation Program is designed to attempt to save resources by referring the parties in some prisoner civil-rights cases to mediation. Of course,

---

[25] *See, e.g., Hill v. J. Pope*, Case No. 2:21-cv-01371-APG-EJY, at ECF No. 1-1 (D. Nev. July 21, 2021).

[26] *See Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005) (defining frivolous and malicious cases).

defendants in such cases have the right not to make any settlement offers, and plaintiffs have the right not to accept settlement offers.  And the court may choose not to refer a case to mediation to preserve limited judicial resources.

Hill, who has filed many cases against employees of the NDOC, recently attended multiple inmate mediations with representatives of the Office of the Attorney General.[27]  Hill also has at least one more mediation scheduled with a representative of the Office of the Attorney General.[28]  This case is against an employee of the NDOC.  Given the court's limited resources, and the fact that these parties have already engaged in numerous mediation sessions, it would not be a productive use of the court's resources to set this case for a mediation session.

I will, however, stay this case for 60 days so that the parties can engage in settlement discussions before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins.  During these 60 days, the parties are free to discuss settling this case privately or during a currently scheduled mediation session, but they are not required to do so.  If the parties have not reached a settlement within 60 days, I will assess the filing fee and put this case on a standard litigation track.

### III.  CONCLUSION

I therefore order that a decision on the application to proceed in forma pauperis (ECF No. 1) is deferred.

I further order that the Clerk of the Court shall file the complaint (ECF No. 1-1) and send Hill a courtesy copy.

---

[27] *See, e.g.*, 3:20-cv-00495-MMD-WGC; 2:20-cv-01655-KJD-DJA; 2:20-cv-01659-RFB-EJY.

[28] *See* 2:20-cv-01745-KJD-BNW, at ECF No. 12 (scheduling mediation for January 28, 2022).

I further order that Claim 1, Eighth Amendment sexual assault, abuse, or harassment, may proceed against Matos.

I further order that Claim 2, Eighth Amendment sexual assault, abuse, or harassment, may proceed against Array.

I further order that Claim 3, Eighth Amendment sexual assault, abuse, or harassment, may proceed against Karva.

I further order that, given the nature of the claims that I have permitted to proceed, this case is stayed for 60 days to allow the parties an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins.

I further order the Clerk of the Court to electronically serve a copy of this order and the complaint (ECF No. 1-1) on the Office of the Attorney General of the State of Nevada, by adding the Attorney General of the State of Nevada to the docket sheet.  This does not indicate acceptance of service.

I further order that if this case is not settled in 60 days, the court will assess the filing fee and place this case on a standard litigation track.

Dated: December 29, 2021

_____
U.S. District Judge